Robert W. LEWIS, Petitioner,

v.

SCIENTIFIC SUPPLY CO., INC.; The Industrial Claim Appeals Office of the State of Colorado; and Colorado Compensation Insurance Authority, Respondents.

No. 94CA1228.

Colorado Court of Appeals,
Div. II.

May 18, 1995.

Alexander & Ricci, William A. Alexander, Jr., Colorado Springs, for petitioner.

Paul Tochtrop, Colorado Compensation Ins. Authority, Denver, for respondents Scientific Supply Co., Inc. and Colorado Compensation Ins. Authority.

No appearance for respondent Indus. Claim Appeals Office of State of Colorado.

Opinion by Judge CRISWELL.

This case presents the issue whether an Administrative Law Judge (ALJ) in a workers' compensation proceeding has inherent authority to provide a remedy for a fraudulent claim by ordering the claimant to repay the benefits fraudulently procured. The Industrial Claim Appeals Office (Panel) ruled that the ALJ has such inherent authority, and consequently, it affirmed the ALJ's order requiring Robert Lewis (claimant) to repay approximately $140,000 in benefits. We affirm in part, for reasons different from those relied upon by the Panel, and set aside in part.

Claimant filed a claim for benefits in May 1984, alleging that he was injured in a single car accident while performing duties for his employer, Scientific Supply Company, Inc. The employer and its insurer, Colorado Compensation Insurance Authority (respondents), contested liability, and the matter proceeded to hearing in November 1984. The ALJ credited claimant's sworn testimony that he "lost the brakes in his motor vehicle," causing the vehicle to leave the road and crash down a cliff. He was awarded benefits for ongoing total temporary disability and medical expense.

Based on the ALJ's previous determination that claimant suffered injuries arising out of and in the course of his employment, in September 1988, the respondents filed a final admission of liability, terminating claimant's temporary disability benefits and admitting liability for permanent total disability benefits.

Four and one-half years later, in April 1993, respondents filed a "Motion to Withdraw the Admission of Liability." This motion asserted that respondents had learned that claimant was imprisoned in the State of Missouri after pleading guilty to charges of arson and second degree murder. The motion also alleged that, when claimant confessed to committing arson and murder, he also admitted to police that he had "faked" the 1984 Colorado workers' compensation claim in order to defraud respondents. Claimant told police that he had deliberately pushed his car over a cliff, injuring himself in the process.

Following an evidentiary hearing, the ALJ found that the claim for benefits was "fraud-

ulent *ab initio*" and ordered claimant to repay all benefits, which totalled slightly less than $140,000. On review, the Panel affirmed the order.

## I.

■ Claimant initially argues that the ALJ and the Panel have no authority under the Workers' Compensation Act to order him to reimburse respondents. He contends that respondents are required to bring a separate action in district court, where he would be entitled to a jury trial and other rights not accorded him before an administrative tribunal. We agree that the ALJ has no authority to remedy the fraud by ordering claimant to repay past benefits; however, we conclude that the ALJ is authorized to terminate future benefits under the reopening provisions of the Workers' Compensation Act.

### A.

Before addressing the substantive issues presented here, it is necessary for us to consider a threshold procedural matter.

In affirming the ALJ's order, the Panel relied on *Vargo v. Industrial Commission,* 626 P.2d 1164 (Colo.App.1981). There, a division of this court held that, if an employer's admission of liability is induced by fraud, the admission is void "*ab initio*" and subject to "retroactive" withdrawal. However, there is a significant difference between the procedural posture in *Vargo* and that evidenced here.

In *Vargo,* there had been no prior adjudication of liability nor any final admission of liability. Here, in contrast, there have been both. The ALJ initially determined liability in 1984; then, in 1988, the respondents filed a final admission of liability, admitting liability for permanent total disability.

Under the law applicable to this claim, the 1988 admission, which was uncontested, became a "final" award which could not be reopened except pursuant to statute. *See* Colo.Sess.Laws 1988, ch. 50, § 8–53–102 at 385–86 (effective July 1, 1988) (now codified as § 8–43–203(2), C.R.S. (1994 Cum.Supp.)).

That statute provides, in pertinent part:

[I]f the claimant does not contest the final admission in writing within sixty days of the date of the final admission the case will be automatically closed as to the issues admitted in the final admission.... Once a case is closed pursuant to this subsection (2), the issues closed may only be reopened pursuant to section 8–43–303.

However, respondents did not file a petition to reopen the claim under consideration here. And, none of the proceedings were conducted pursuant to the reopening statute, § 8–43–303, C.R.S. (1994 Cum.Supp.).

■ Apparently in reliance on *Vargo v. Industrial Commission, supra,* respondents concluded that it was sufficient to file a "Motion to Withdraw the Admission of Liability." Although such a motion would be appropriate if the case had remained open, when, as here, a claim has been closed, it is necessary for an employer or its carrier to seek a reopening under § 8–43–303. *See J & D Masonry, Inc. v. Kornegay,* 224 Va. 292, 295 S.E.2d 887 (1982).

■ Nevertheless, in the interest of judicial and administrative economy, we will treat the respondents' Motion to Withdraw the Admission of Liability as the substantive equivalent of a petition to reopen the claim, and we will consider the administrative orders as granting a request to reopen. In doing so, we note that, inasmuch as claimant had been receiving weekly permanent total disability benefits through December 16, 1991, a petition to reopen the claim would have been timely under § 8–43–303(2)(a), C.R.S. (1994 Cum.Supp.).

### B.

Relying on *Vargo v. Industrial Commission, supra,* the Panel held that the ALJ had "inherent" authority to remedy the prior fraud by ordering claimant to repay the fraudulently procured benefits. We disagree with the Panel. We conclude, rather, that the ALJ does not possess any such "inherent" authority.

■ As indicated above, *Vargo* is inapposite because it was not necessary in that case to reopen any final award. In contrast, an administrative adjudication or award of

workers' compensation benefits, like any judgment, is generally immune from collateral attack, except when the award is, for some reason, wholly invalid. *State Compensation Insurance Fund v. Luna,* 156 Colo. 106, 397 P.2d 231 (1964); *Wait v. Jan's Malt Shoppe,* 736 P.2d 1265 (Colo.App.1987).

■ If the award in this case were a civil judgment entered by a court, respondents would be limited to the relief afforded under C.R.C.P. 60(b) or, alternatively, to an independent action in equity to have the award set aside. Both of these remedies are subject to strict limitations. *See Southeastern Colorado Water Conservancy District v. Cache Creek Mining Trust,* 854 P.2d 167 (Colo.1993).

■ Likewise, the administrative tribunals which adjudicate workers' compensation claims are created by statute, and the jurisdiction, powers, duties, and authority of these tribunals are limited to that provided by statute. *Maryland Casualty Co. v. Industrial Commission,* 116 Colo. 58, 178 P.2d 426 (1947).

■ Accordingly, we conclude that an ALJ has no inherent authority to remedy fraud. Rather, the authority to do so must rest upon some provision of the statutes granting to the ALJ jurisdiction over the subject.

### C.

■ Section 8–43–303 authorizes the ALJ to review and reopen any award on the grounds of "an error, a mistake, or a change in condition." The word "mistake" as used in this section means any mistake of law or fact. *Ward v. Azotea Contractors,* 748 P.2d 338 (Colo.1987). Perjured testimony resulting in an erroneous finding of fact concerning the cause of any injury or the nature or extent of an employee's disability comes squarely within the realm of a "mistake" of fact. *See Contes v. Metros,* 113 Colo. 1, 153 P.2d 1000 (1944); *see also Williams v. Jones,* 11 F.3d 247 (1st Cir.1993).

■ Hence, we agree that the ALJ could reopen the claim on the basis of claimant's confession to police that he had "faked" the 1984 auto accident. However, we do not agree that the ALJ could, on that basis, order claimant to reimburse the respondents for almost $140,000 in past benefits.

Section 8–43–303(1) explicitly provides that, if an order to reopen a claim on the grounds of error, mistake, or change in condition is entered:

compensation and medical benefits previously ordered may be ended, diminished, maintained, or increased. *No such reopening shall affect the earlier award as to moneys already paid.* (emphasis added)

Thus, in ordering a reimbursement of past benefits, the ALJ violated the express statutory prohibition against affecting "the earlier award as to moneys already paid." This is not to say, of course, that the administrative tribunal is powerless to provide any remedy for the fraud; obviously, under the reopening statute, the ALJ has the power to terminate all future benefits payable under the award.

This conclusion is bolstered by a comparison of the Workers' Compensation Act to the Unemployment Act. Under the Unemployment Act, the agency is specifically authorized to recoup benefits procured by fraud:

If by reason of fraud, mistake, or clerical error a claimant receives moneys in excess of benefits to which he is entitled ... the division shall recoup such moneys....

Section 8–74–109(2), C.R.S. (1986 Repl.Vol. 3B). However, no analogous provision is to be found in the Workers' Compensation Act.

We note that, effective July 1, 1994, the General Assembly has specifically allowed a workers' compensation carrier to take credit for, or to offset, "previously paid" benefits against further payments, if the claimant "admits" obtaining the previous payments through fraud, or if there has been a previous "civil judgment or criminal conviction" entered, establishing the claimant's fraud. Section 8–43–304(2), C.R.S. (1994 Cum. Supp.). That statutory provision is not applicable here, however, and we need not decide whether it has the effect either of enlarging or of limiting the authority which we here determine the ALJ possessed prior to that statute's effective date.

In summary, then, we conclude that the ALJ could properly reopen the claim in this

case on the basis of fraud and that he could terminate any future benefits because of such fraud. However, the ALJ exceeded his authority under § 8–43–303 in ordering the claimant to reimburse the respondents for past benefits.

## II.

Claimant's final two arguments relate to the ALJ's factual finding that he staged the 1984 accident and claimant's assertion that respondents waived their right to obtain any relief from any fraud. These arguments lack merit.

The ALJ is the sole trier of fact in workers' compensation proceedings, and consequently, if the findings of fact are supported by substantial evidence in the record, they are binding on review. Sections 8–43–301(8) & 8–43–308, C.R.S. (1994 Cum.Supp.); *Martinez v. Regional Transportation District,* 832 P.2d 1060 (Colo.App.1992). Here, there is ample support for the ALJ's findings with respect to the claimant's fraudulent misrepresentations, his perjury, and the voluntariness of his subsequent confession. *Levy v. Everson Plumbing Co.,* 171 Colo. 468, 468 P.2d 34 (1970). These findings, in turn, fully support the termination of future benefits.

Further, the record reveals that claimant did not raise the issue of respondents' alleged waiver before the ALJ. Hence, the issue of waiver was itself waived and will not be considered on review. *See Monolith Portland Cement v. Burak,* 772 P.2d 688 (Colo.App.1989).

That portion of the Panel's order requiring the claimant to repay nearly $140,000 in past benefits is set aside. The remainder of the order is affirmed insofar as it terminates future benefits to the claimant. The cause is remanded to the Panel with directions to enter an order stating that the previous award was reopened pursuant to § 8–43–303 and that all future benefits to the claimant were terminated.

BRIGGS and ROY, JJ., concur.